UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


MID-STATE SURETY CORPORATION

    **Plaintiff**

**v.**

                          Civil Action No.: 2:04-0813
THRASHER ENGINEERING, INC.

    **Defendant**



MEMORANDUM OPINION AND ORDER


      Pending before the court is the motion of Thrasher
Engineering, Inc. ("Thrasher"), filed February 6, 2006, seeking
summary judgment.  Also pending before the court is the counter-
motion of Mid-State Surety Corporation ("Mid-State"), filed
February 27, 2006, seeking partial summary judgment.


I.


      This action arises out of the construction of a water
treatment facility ("facility") in Mingo County, West Virginia.
Mingo County Public Service District ("the District") was the
authority responsible for obtaining funds to construct the

1

facility.  On September 20, 1999, the District entered into an agreement for engineering services ("engineering agreement") with Thrasher whereby Thrasher agreed to design the facility and serve as the District's "resident project representative." Approximately eleven months later, the District and Holley Brothers Construction Company ("Holley") entered into an agreement for the construction of the facility ("construction contract"), under which Holley agreed to construct the facility for the sum of $5,900,000.  Both the engineering agreement and construction contract were form documents provided by the Rural Utilities Services ("RUS"), a division of the United States Department of Agriculture, which furnished the majority of the funding for the facility, and required that the form documents be used.

Prior to entering into the construction contract, Holley contracted with Mid-State to serve as surety.  Mid-State subsequently issued performance and payment bonds for Holley's work on the project.  On August 28, 2000, RUS convened a pre-construction conference at which the District, Thrasher, RUS, and Holley were present.  A number of procedural and planning issues were addressed at this conference, including the discussion of payment related issues.

2

In October of 2000, construction began.  The parties do not dispute that during the course of construction, Holley failed to pay a number of suppliers who provided equipment and materials stored on site when the District released funds for that purpose.  Around March of 2002, Holley was declared to be in default and was terminated for cause.  According to Mid-State, at the time of Holley's default only $222,683 in unearned contract balance remained; however, the value of the work required to fulfill Holley's obligations under the construction contract was $1,601,758.

Pursuant to its obligations under the performance bond, Mid-State entered into an agreement with the District ("takeover agreement") to complete the construction of the facility.  On August 5, 2002, Mid-State hired a new contractor, Diversified Enterprises, Inc. ("Diversified"), to perform the remaining uncompleted work on the project.  Also, pursuant to its obligations under the payment bond, Mid-State issued payments to vendors, suppliers and subcontractors who had supplied materials and equipment on the project but who had not been paid by Holley.

On August 3, 2004, Mid-State instituted this action

3

asserting claims against both Thrasher and the District.[1]  The
complaint was subsequently amended on March 15, 2005.  Count I of
the amended complaint alleges that Thrasher was negligent in
carrying out its duties on the project.  More specifically, Mid-
State maintains that Thrasher negligently certified and made
payments to Holley.  In Count II Mid-State alleges that Thrasher
engaged in misfeasance of its duties.[2]  Count III maintains Mid-
State is equitably subrogated to the District's rights under the
engineering agreement and seeks recovery for Thrasher's
negligence and breach of the duty of good faith and fair dealing.
According to the consolidated pretrial order, Mid-State seeks
damages in the amount of (1) $724,733 for Thrasher's failure to
obtain evidence from Holley that title to the stored materials
had passed to the District and (2) $1,379,075 for Thrasher's
failure to properly measure the progress of Holley's work
resulting in overpayment of contract funds to Holley.  Mid-State
further requests an additional 10% in prejudgment interest on
both claims.

---

[1]The District was dismissed with prejudice from this action
pursuant to an agreed dismissal order entered February 22, 2005.

[2]Thrasher's conduct forming the basis of Mid-State's
negligence allegation also serves as the basis for Mid-State's
misfeasance allegation.

4

On January 26, 2005, Mid-State instituted an action against Diversified ("Diversified action") alleging in essence that Diversified failed to complete construction of the facility.[3] By order dated December 8, 2005, the court, noting the factual overlap between the two cases and the interests of judicial economy, consolidated the Thrasher and Diversified actions.  On the eve of trial, the court conducted a conference with the parties and observed that there were significant unresolved legal issues remaining in this case, namely, whether Thrasher owed any duty to Mid-State, that had yet to be briefed. Citing these issues, the court continued the trial to May 22, 2006, and directed the parties to file dispositive motions. Diversified and Mid-State subsequently agreed to arbitrate their claims, and the court, upon the parties' request, has stayed the Diversified action.

In its motion for summary judgment, Thrasher contends Mid-State's claims for negligence and misfeasance fail inasmuch as Thrasher owed neither a contractual nor a common law duty to Mid-State.  Thrasher further maintains that Mid-State's assertion

---

[3]The underlying facts of that action are more fully set forth in the court's memorandum opinion and order entered December 12, 2005, which appears as Docket Entry Number 45 under the Civil Action Number 2:05-0072.

5

that it is equitably subrogated to the District's rights is untenable under both West Virginia law and principles of equity. Mid-State responds contesting the entirety of Thrasher's position.  Mid-State also asserts it is entitled to partial summary judgment on (1) its Count I claim for damages arising from Thrasher's failure to ensure that title to stored materials supplied to the project had passed from the suppliers to the District and (2) Thrasher's affirmative defenses of contributory negligence[4] and the negligence of Holley, an absent tortfeasor.

## II.

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those necessary to establish the elements of a party's cause of action.  Anderson v.

---

[4]Although Thrasher's answer to Mid-State's amended complaint asserts the affirmative defense of "contributory negligence," West Virginia no longer recognizes the doctrine of contributory negligence.  Bradley v. Appalachian Power Co., 256 S.E.2d 879 (W. Va. 1979) (contributory negligence abolished and modified comparative fault adopted).  Accordingly, the court will use the phrase "comparative negligence" when addressing this issue.

6

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue

of material fact exists if, in viewing the record and all

reasonable inferences drawn therefrom in a light most favorable

to the non-moving party, a reasonable fact-finder could return a

verdict for the non-movant.  Id.  The moving party has the burden

of showing there is an absence of evidence to support the

nonmoving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317,

325 (1986).  If the movant satisfies this burden, then the non-

movant must set forth specific facts as would be admissible in

evidence that demonstrate the existence of a genuine issue of

fact for trial.  Fed. R. Civ. P. 56(c); Id. at 322-23.  A party

is entitled to summary judgment if the record as a whole could

not lead a rational trier of fact to find for the non-moving

party.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

        Conversely, summary judgment is not appropriate if the

evidence is sufficient for a reasonable fact-finder to return a

verdict in favor of the non-moving party.  Anderson, 477 U.S. at

248.  Even if there is no dispute as to the evidentiary facts,

summary judgment is also not appropriate where the ultimate

factual conclusions to be drawn are in dispute.  Overstreet v.

Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

        In reviewing the evidence, a court must neither resolve

7

disputed facts or weigh the evidence, <u>Russell v. Microdyne Corp.</u>, 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility.  <u>Sosebee v. Murphy</u>, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

III.

A.    <u>Thrasher's Duty to Mid-State</u>

The court begins its analysis with the threshold inquiry of whether Thrasher owes any duty to Mid-State.  As the West Virginia Supreme Court of Appeals has recognized "the question of whether a duty exists is a matter of law."  <u>Clark v. Druckman</u>, 624 S.E.2d 864, 868 (W. Va. 2005).  Accordingly, the existence of a duty is a question that ordinarily may be resolved by the court on a motion for summary judgment.

The issue of whether an engineer owes a duty to a

8

surety in the absence of privity of contract, has yet to be
addressed by the West Virginia Supreme Court.  This court,
however, is not without guidance inasmuch as the question of
whether an engineer owes a duty to a contractor in the absence of
privity of contract has been addressed by the West Virginia
court.  Eastern Steel Constructors, Inc. v. City of Salem, 549
S.E.2d 266 (W. Va. 2001).

        In Eastern Steel, the defendant engineer prepared plans
and specifications that were to be used in soliciting bids for
the construction of a sewage treatment plant.  Id. at 269.
Relying on the plans and specifications, the plaintiff contractor
bid on and was ultimately awarded a contract for the construction
of one of the sewer lines to the plant.  Id.  After encountering
delays on the project, purportedly the result of the engineer's
failure to disclose the sub-surface rock conditions on the
project, the contractor brought a tort action alleging the
engineer had been negligent.  Id.  The circuit court granted the
engineer's motion for summary judgment noting privity of contract
was absent between the engineer and contractor and holding the
contractor's claim was barred inasmuch as West Virginia law does
not permit a plaintiff to recover damages for purely economic
loss under a negligence theory in the absence of either physical

injury, property damage or a contract.  <u>Id.</u> at 270.

On appeal, the West Virginia Supreme Court began its analysis with the observation that:

> [T]he common thread which permeates the analysis of potential economic recovery . . . is the recognition of the underlying concept of duty. Absent some <u>special relationship</u>, the confines of which will differ depending upon the facts of each relationship, there simply is no duty.

<u>Id.</u> at 272 (<u>quoting</u> <u>Aikens v. Debow</u>, 541 S.E.2d 576 (W. Va. 2000)(emphasis in original).  The court further explained that a special relationship may be demonstrated with evidence that the harm suffered by the plaintiff was foreseeable; however, the court also acknowledged that there are additional considerations in determining the existence of a duty such as "'the likelihood of injury, the magnitude of the burden guarding against it, and the consequences of placing that burden on the defendant.'" <u>Id.</u> (<u>quoting</u> <u>Aikens</u>, 541 S.E.2d at 581 (W. Va. 2000)).

Applying these principles the court found that the fact that the contractor (1) must rely on design documents to calculate the bid and (2) is subject to the engineer's oversight on the project was sufficient to make the harm suffered by the contractor foreseeable.  <u>Id.</u>  Accordingly, the court held that a special relationship existed between the engineer and the

10

contractor, and the engineer owed a duty of care to the contractor.  Id.

In an effort to further define the contours of the duty owed by the engineer to the contractor, the court also noted that the parameters of the duty must be defined on a case-by-case basis and "the exact nature of the specific duty owed by a design professional may be impacted by provisions contained in the various contracts entered among the parties (e.g. the contract between the owner and the design professional, and the contract between the owner and the contractor)."  Id. at 275 (emphasis in original).

While acknowledging that the court in Eastern Steel was addressing the claim of a contractor, not a surety, against an engineer, the principles articulated in Eastern Steel are applicable here.  In determining the existence of a duty, the court must consider (1) the foreseeability of the harm allegedly suffered by Mid-State, (2) the impact of contractual provisions and (3) additional considerations of the likelihood of Mid-State's injury, the magnitude of Thrasher's burden in preventing the harm, and the consequences of placing any burden on Thrasher.

11

1.   <u>Foreseeability of Harm</u>

Mid-State alleges that it has suffered harm as a result of Thrasher's failure (1) to verify that title to stored materials had passed to the District and (2) to properly monitor and measure the progress of Holley's work before certifying payment to Holley.

With respect to the foreseeability of harm suffered by Thrasher's alleged failure to verify that title to stored materials had passed to the District, Thrasher concedes that "it may be foreseeable that a surety may have to pay on a bond where the design professional fails to discover the contractor's bad acts in absconding with funds meant to pay vendors."  Thrasher subsequently abandoned this concession in its reply and argues "the criminal acts of fraud by Holley Brothers were unforeseeable to Thrasher."  The court agrees with Thrasher's original position that it is foreseeable that a surety may have to make payments pursuant to its bond obligation where an engineer under a duty to do so fails to discover that a contractor is not paying suppliers.  In fact, a contractor's practice of failing to pay suppliers despite having received funds for this purpose occurs frequently enough to have developed its own term within the

12

industry.  The practice is known as "riding" the suppliers.[5]
Moreover, the District, Holley and Thrasher appear to have
expressly contemplated the situation in which a contractor
receives funds to pay suppliers but then fails to do so inasmuch
as the District attempted to manage this risk as evidenced by the
construction contract and the conference record.  <u>See</u>, pgs. 15-17
<u>infra</u>.

It also seems foreseeable that a surety would suffer
harm as a result of the engineer's failure to properly monitor
the progress of a contractor and the engineer's subsequent
approval of overpayment of the contract balance.  A guidebook
produced by the National Society of Professional Engineers and
distributed at a continuing education program for West Virginia
engineers states:

> [I]f a surety company pays a loss under a bond, it
> may seek to recover the amount of that loss not only
> from its principal, but also from any third party
> such as the design professional. . . [f]or example,
> the surety may claim that its rights under the bond
> were prejudiced by overpayment to the contractor that
> was the result of the design professional's
> negligence in the payment certification process.[6]

---

[5]<u>See</u> Campbell, Michael, "The Liability of Design
Professionals to the Surety," 20 Forum 591, 593 (1985).

[6]The court in <u>Eastern Steel</u> acknowledged that documents such
as this may be helpful in an analysis of the existence of a duty.
As the court explained, "the duty of care may be further defined

13

("Understanding and Managing Risk: A Guide," attached as Ex. 5 to Pl.'s Resp. and Count. Mot.); <u>see</u> <u>also</u> <u>Standard Roofing Co. v. Elliot Const.</u>, 535 So.2d 870 (La.App. 1st Cir. 1988) (design professional must be deemed and held to know that his services are "'for the protection, not only of the interests of the owner, but also the surety on the contractor's bond who lacks supervisory power'")(internal citations omitted).  Further, Thrasher's lead engineer acknowledged that in the event of a contractor's default, the contractor's surety is entitled to receive the remaining unearned contract balance for work done to complete the project. (Dep. of Dayton Carpenter, Professional Engineer, p. 54, attached as Ex. 7 to Pl.'s Resp. and Count. Mot.)[7]

2.   <u>Relevant Contractual Provisions</u>

        The court next turns to the construction documents. Both Mid-State and Thrasher devote much attention in the briefing to identifying and explaining the relevant contractual

---

by rules of professional conduct promulgated by the agencies charged with overseeing the specific profession of which a defendant is a member." <u>Id.</u> at 275.

        [7]The takeover agreement between Mid-State and the District provides that Mid-State is to be paid the remaining unearned contract balance and the retainage.

provisions.  Mid-State directs the court's attention to (1) paragraph 16 of the engineering agreement, (2) paragraphs 19.1 and 19.2 of the construction contract, and (3) paragraph 8(c) of the conference record.

The pertinent contractual provisions support Mid-State's argument that Thrasher did indeed owe a duty to Mid-State.  Paragraph 16 of the engineering agreement provides in relevant part:

> The ENGINEER will review the contractor's application for progress and final payment, and, when approved, submit same to OWNER [the District] for payment.

(Engineering Agreement, attached Ex. A to Def.'s Memo. in Supp. of Mot. for Summ. Judg.)  Paragraphs 19.1 and 19.2 of the general conditions appendix to the construction contract provide in relevant part:

> 19.1 At least (10) days before each progress payment falls due (but not more often than once a month), the CONTRACTOR will submit to the ENGINEER a partial payment estimate filled out and signed by the CONTRACTOR covering the WORK performed during the period covered by the partial payment estimate and supported by such data as the ENGINEER may reasonably require.  If payment is requested on the basis of materials and equipment not incorporated in the WORK but delivered and suitably stored at or near the site, the partial payment estimate shall also be accompanied by such supporting data, satisfactory to the OWNER, as will establish the OWNER'S title to the material

15

and equipment and protect the OWNER'S interest
therein, including applicable insurance.  The
ENGINEER will, within ten (10) days after receipt
of each partial payment estimate, either indicate
in writing approval of payment, and present the
partial payment estimate to the OWNER, or return
the partial payment estimate to the CONTRACTOR
indicating in writing the reasons for refusing to
approve payment.  In the latter case, the
CONTRACTOR may make the necessary corrections and
resubmit the partial payment estimate.  The OWNER
will, within (10) days of presentation of an
approved partial payment estimate, pay the
CONTRACTOR a progress payment on the basis of the
approved partial payment estimate less the
retainage . . .

19.2  The request for payment may also include an
allowance for the cost of such major materials and
equipment which are suitably stored either at or
near the site.

(General Conditions of Construction Contract, attached as Ex. 2

to Pl.'s Resp. and Count. Mot.)[8]

Paragraph 8(c) of the Record of the Pre-Construction

Conference ("conference record") clarifies the type of

"supporting data" that Holley was to provide to Thrasher in order

to "establish the OWNER'S title to the material and equipment and

protect the OWNER'S interest therein."  That section provides:

Requests for payment of stored materials must
include copies of the invoices showing the line
item of the pay estimate break down that the item

---

[8]The general conditions of the construction contract are
incorporated by reference into the construction contract.
Neither party disputes the applicability of these provisions.

16

relates to.  The following month paid receipts must
be furnished for all previously paid stored
material invoices.

(Record of Preconstruction Conference, attached as Ex. 3 to Pl.'s

Resp. and Count. Mot.)[9]

Addressing Mid-State's claim that Thrasher

overcertified payments to Holley, under the relevant documents it

was Thrasher's duty pursuant to Term 16 of the engineering

agreement to monitor Holley's progress on the project to

determine the work was commensurate with the amount sought.  In

the event Holley submitted an application which sought funds

beyond the value of the work completed, Thrasher was required

under paragraph 19.1 of the construction contract to reject the

application.

With respect to Mid-State's stored materials

claim, under paragraphs 19.1 and 19.2 of the construction

contract, if the materials were stored at or near the site,

Thrasher could authorize the contractor to be paid for the cost

_____

[9]Thrasher disputes the relevance of the conference record
inasmuch as it was not incorporated into the construction
contract.  The court disagrees.  The document is probative of the
parties' duties and there is no question that Thrasher assented
to the procedures set forth in the conference record inasmuch as
the conference record bears the signature of Carpenter,
Thrasher's lead engineer.

17

of the materials, so long as Holley provided evidence to
Thrasher, which satisfied the District, that Holley had paid for
the materials so that title passed to the District.  As further
clarified in the conference record, if Holley requested payment
for stored materials in its monthly application for a progress
payment, in the following month Thrasher was required to obtain
paid receipts showing that Holley had in fact paid the suppliers
as it had represented in the application for a progress payment
it had submitted in the previous month.

      As the surety on the project, it appears reasonable for
Mid-State to rely on the protections provided by Thrasher's
contractual obligations.  <u>See</u> <u>Aetna Ins. Co. v. Hellmoth, Obata &</u>
<u>Kassabaum, Inc.</u>, 392 F.2d 472, 475 (8th Cir.  1968) (applying
Missouri law and noting that surety can rely on provisions of the
construction contract between owner and design professional
inasmuch as surety had right "to appreciate the fact that its
risk would be less hazardous with assurance of inspection and
supervision than where there were no safeguards").

      Thrasher does not offer alternative interpretations of
the provisions cited above.  Instead, Thrasher has identified two
provisions, namely, Article 14 of the engineering agreement and
provision 19.6 of the construction construct, that it contends

operate to defeat Mid-State's claims.

Section 19.6 of the construction contract provides in pertinent part that

> The CONTRACTOR will indemnify and save the OWNER or the OWNER'S agents harmless from all claims growing out of the lawful demand of SUBCONTRACTORS, laborers, workmen, mechanics, materialmen, and furnishers of machinery and parts thereof, equipment, tools, and all supplies, incurred in the furtherance of the performance of the WORK . . .

(General Conditions of Construction Contract, attached as Ex. 2 to Pl.'s Resp. and Count. Mot.)  Thrasher asserts that it is an "agent" of the District and therefore indemnified "from the exact scenario that underlies Mid-State's remaining claims."[10]  In support, Thrasher contends that its status as an "agent" is derived from the fact it acted as the District's "project representative" under the engineering agreement.

The court is not persuaded by Thrasher's argument for a number of reasons.  First, paragraph 19.6, as Mid-State correctly notes, provides for indemnification of subcontractor claims and Mid-State is asserting claims based on its status as a surety, not as a subcontractor.  Furthermore, even if the court were to

---

[10]Thrasher asserts that under the performance bond, Mid-State adopted the obligations of Holley.  Mid-State does not dispute this assertion.

assume that Mid-State is effectively asserting a claim "growing out of the lawful demand of SUBCONTRACTORS," Thrasher is not an "agent" under the construction contract; rather, it is an "ENGINEER," as that term is defined in paragraph 1.12 of the construction contract. This reading of paragraph 19.6 is supported by the fact that the construction contract provides in paragraph 24 that the District and the "ENGINEER and their agents" are to be indemnified. If the agreement was to indemnify Thrasher under paragraph 19.6, it appears that the term "ENGINEER" would have been used as it was in paragraph 24. Paragraph 19.6 is thus of no assistance to Thrasher.

Turning to Thrasher's argument under Article 14 of the engineering agreement, that section provides,

> Unless notified by the OWNER in writing that the
> Owner will provide for resident inspection, the
> ENGINEER will provide resident construction
> inspection. The ENGINEER'S undertaking hereunder
> shall not relieve the contractor of contractor's
> obligation to perform the work in conformity with
> the drawings and specifications and in a
> workmanlike manner; shall not make the Engineer an
> insurer of the contractor's performance; and shall
> not impose upon the ENGINEER any obligation to see
> that the work is performed in a safe manner.

(Engineering Agreement, attached Ex. A to Def.'s Memo. in Supp. of Mot. for Summ. Judg.) Thrasher appears to contend that to impose a duty in this instance is make it an "insurer of the

20

contractor's performance of the agreement."  Such a contention is without merit.  Under this provision Thrasher is not guaranteeing that the work performed by Holley is in compliance with the contract.  The provision would be helpful to Thrasher only if Mid-State was seeking recovery for any defective work performed by Holley; however, Mid-State has made no such claim.

### 3.    Additional Considerations

The court next addresses the additional considerations of the likelihood of Mid-State's injury, the magnitude of Thrasher's burden in preventing the harm, and the consequences of placing any burden on Thrasher.

As noted above, it was likely that should Thrasher not fulfill it duties that Mid-State, as the contractor's surety, would suffer injury.  Moreover, imposing a duty upon Thrasher imposes no additional burden on Thrasher since Thrasher already owed the same duty to the District.  Stated differently, the District could have brought an identical action against Thrasher. Moreover, Thrasher is not exposed to double liability inasmuch as the amount Thrasher would owe should it be held liable for breaching its duties to Mid-State is the same as the amount it would have owed the District had it brought suit against

Thrasher.  Indeed, to not permit Mid-State to proceed with a
cause of action would effectively mean that Thrasher could
negligently perform its duties free from any potential liability
so long as the District sought recovery only from Mid-State.  See
Designed Ventures, Inc. v. Housing Auth. of the City of Newport,
132 B.R. 677, 679 (Bankr. D. RI 1991) (permitting surety's action
against design professional absent privity of contract and noting
that not permitting the action would effectively condone the
design professional's "right to do its job negligently and with
impunity as far as innocent third parties who suffer economic
loss are concerned").  Also, to impose a duty under these facts
would not make Thrasher an "insurer" of Holley's performance as
Thrasher suggests since Thrasher is not liable unless Thrasher
itself is at fault; that is, Thrasher is liable only to the
extent Mid-State can demonstrate that Thrasher was in fact
negligent and that Thrasher's negligence was the proximate cause
of Mid-State's loss.

        As a final note, while not binding authority, the court
finds it instructive that a number of courts addressing the
question under consideration here have permitted the surety to
pursue an action against a design professional.  Aetna Ins. Co.,
392 F.2d at 475 (Missouri law permits surety suit against design

professional); <u>Designed Ventures, Inc.</u>, 132 B.R. at 678 (Rhode
Island law permits surety suit against architect); <u>State for Use
of Nat'l Sur. Corp. v. Malvaney</u>, 72 So.2d 424 (Miss. 1954)
(Mississippi law permits surety suit against engineer); <u>Peerless
Ins. Co. v. Cerny & Assoc., Inc.</u>, 199 F.Supp. 951, 955 (D. Minn.
1961) (Minnesota law permits surety suit against architect);
<u>American Fidelity Fire Ins. Co. v. Pavia-Byrne Engineering Corp.</u>,
393 So.2d 830, 837 (La.App. 2d Cir. 1981) (Louisiana law permits
surety suit against engineer).

        In light of the foregoing considerations, the court
concludes that under the facts of this case a "special
relationship" existed between Mid-State and Thrasher not unlike
that of the contractor and engineer in <u>Eastern Steel</u>.  Thrasher
thus owed a duty of care to Mid-State and Thrasher's motion for
summary judgment on this issue must be denied.

B.    <u>Mid-State's Equitable Subrogation Claim</u>

        Mid-State contends that inasmuch as it paid the debts
of the District, both to unpaid suppliers and to complete the
unfinished work of Holley, it was secondarily liable under the
payment and performance bond and thus succeeded to the rights of
the District.  Accordingly, Mid-State argues it may pursue the

rights and remedies otherwise available to the District.
Thrasher responds contending, among other things, that Mid-
State's equitable subrogation claim fails inasmuch as Mid-State
paid the debts of Holley and is therefore subrogated to the
rights of Holley, not the rights of the District.  The parties
cite no suretyship law to support their divergent positions.

It has been recognized that subrogation is an
"equitable remedy" whereby a party that is secondarily liable who
has paid the debt of another is assigned the rights and remedies
of the original creditor.  Grayam v. Department of Health & Human
Resources, 498 S.E.2d 12, 14 (W. Va. 1997) (internal citations
omitted).  Stated differently, under the doctrine of subrogation
"one who has the right to pay, and does pay, a debt which ought
to have been paid by another is entitled to exercise all the
remedies which the creditor possessed against that other."  Id.

Mid-State has not identified which debts of the
District it has satisfied and there appears to be no support in
the relevant agreements for Mid-State's position that it has paid
the debts of the District.  Paragraph 6.1 of the construction
contract provides,

> Contractor shall provide and pay for all materials,
> labor, tools, equipment, water, light, power,
> transportation, supervision, temporary construction

24

> of any nature, and all other services and
> facilities of any nature whatsoever necessary to
> execute, complete, and deliver the work within the
> specified time.

(General Conditions of Construction Contract, attached as Ex. 2
to Pl.'s Resp. and Count. Mot.)  As this provision makes clear,
it was Holley, not the District, that was responsible for paying
vendors and suppliers.  Accordingly, Mid-State satisfied Holley's
obligations when it paid vendors and suppliers pursuant to the
payment bond and consequently Mid-State is subrogated to the
rights of the creditors and vendors against Holley.

        Similarly, paragraph 1 of the construction contract
provides [t]he CONTRACTOR will commence and complete the
construction of [a]. . .Water Treatment Plant . . ."  Under this
paragraph it was Holley, not the District, that was responsible
for completing the work on the project; therefore, Mid-State did
not satisfy any debt of the District when Holley defaulted and
Mid-State employed another contractor to fulfill its performance
bond obligation to complete the project.

        Inasmuch as Mid-State has not paid any of the debts of
the District, its claim that it is equitably subrogated to the
District's rights fails.

25

**C.**   **Comparative Negligence of Mid-State and Negligence/Fraud of**
         **Holley**

    **1.**   **Comparative Negligence of Mid-State**

        In its counter-motion for partial summary judgment Mid-State contends that there is no evidence of record that it was negligent.  In the briefing, Thrasher has not responded to this argument and a review of the recently submitted consolidated pretrial order confirms that Thrasher does not contend that Mid-State was comparatively negligent.  In light of these considerations, Mid-State is entitled to summary judgment on Thrasher's affirmative defense of comparative negligence.

    **2.**   **The Negligence/Fraud of Holley**

        Before discussing this issue the court notes that in a telephonic conference conducted January 6, 2006, the court denied Mid-State's motion in limine which sought to prohibit Thrasher from introducing evidence of Holley's comparative fault.  It appears that Mid-State's motion seeking partial summary judgment on "Thrasher's affirmative defense of negligence of an absent tortfeasor" is simply an attempt to circumvent the court's previous ruling.  Nevertheless, Thrasher has not mentioned the court's prior ruling in the briefing and has responded in

substance to Mid-State's argument.  In light of the importance of this issue and the absence of any record setting forth the court's rationale supporting its previous ruling, the court will address this issue again with the benefit of additional briefing.

Mid-State maintains that inasmuch as Thrasher owes an independent duty to Mid-State, Mid-State has an independent cause of action against Thrasher and the negligence or fraud of Holley is "entirely irrelevant."  In support, Mid-State relies heavily on <u>Rowe v. Sisters of the Pallotine Missionary Soc'y</u>, 560 S.E.2d 491 (W. Va. 2001).

In <u>Rowe</u>, the defendant hospital sought to introduce evidence that absent tortfeasors, namely, doctors who plaintiff's parents had called but who had refused to treat the plaintiff, should be assigned fault under the doctrine of comparative negligence.  In holding that such evidence was inadmissible, the court found

> [W]ithout some proof of negligence by the
> plaintiff, there is no requirement that the jury
> be instructed to ascertain or apportion fault
> between the defendant and a non-party tortfeasor
> . . . More importantly, even if the plaintiff is
> guilty of some contributory negligence, in the
> absence of substantial evidence, an attorney
> cannot make an "empty chair" argument and blame
> an absent tortfeasor for a plaintiff's injury.

<u>Id.</u> at 499-500.  Applying <u>Rowe</u>, Mid-State maintains that because

27

there is no issue of Mid-State's alleged comparative negligence
there is no issue as to Holley's comparative negligence.

Thrasher does not discuss <u>Rowe</u>; rather, it asserts that
even assuming it acted negligently Mid-State must still meet its
burden of demonstrating that Thrasher's negligence was the
proximate cause of its loss.  Thrasher further contends that
Holley's fraud in "knowingly accepting payment for invoices for
which it did not pay vendors" was the intervening cause of Mid-
State's loss.[11]

The recent opinion of Chief Justice Davis in
<u>Sydenstricker v. Mohan</u>, 618 S.E.2d 561 (W. Va. 2005), sheds light
on the apparent conflict between the rule from <u>Rowe</u> that a
defendant may not introduce evidence of the fault of an absent
tortfeasor and the general principle that a defendant may
introduce evidence which tends to demonstrate that there was an
intervening cause of the plaintiff's injury.  In <u>Mohan</u>, the
defendant doctor sought to introduce evidence that another
doctor, who was no longer a party to the litigation, had been

---

[11]Thrasher's assertion that Holley's actions amount to
"fraud" appears to only apply to Mid-State's stored materials
claim.  It is unclear how Thrasher could be excused by any
"fraud" on the part of Holley for overpaying Holley for the
amount of work Holley performed inasmuch as Holley's work would
have been in plain view for Thrasher to inspect and review.

negligent in treating the plaintiff's child and his negligence was the intervening cause of the child's injuries.  Id. at 566. Plaintiff argued that Rowe prohibited the introduction of this evidence inasmuch as there was no evidence the plaintiff's child had been negligent.  Id.

The West Virginia Supreme Court of Appeals upheld the introduction of the evidence and declined to address the admissibility of the evidence under the comparative fault principles it had articulated in Rowe.  Id. at 567.  Instead, the court found that the remaining defendant doctor was entitled to introduce evidence of the absent doctor's negligence inasmuch as the defense of intervening cause can only be established through the introduction of evidence that demonstrates the negligence of another party or a nonparty.  Id. at 568

In light of these principles, the court does not concur in Mid-State's assessment that the fraud of Holley is "entirely irrelevant."  Under Mohan, Thrasher is entitled to introduce evidence of Holley's fraud inasmuch as it tends to demonstrate that the fraud served as an intervening cause of Mid-State's loss.  It seems reasonable for Thrasher to assert that even if it had used ordinary skill, care and diligence in rendering its engineering services, it would not have discovered Holley's

29

fraud.

        The court also notes that to the extent Thrasher is
suggesting that Holley's alleged fraud may be imputed to Mid-
State to defeat or offset Mid-State's claim against Thrasher,
this argument is without merit.  Mid-State is not liable for the
fraud of Holley and to suggest otherwise would be to convert Mid-
State's role as Holley's surety to that of Holley's liability
insurer.  See Gateway Communications, Inc. v. John R. Hess, Inc.,
541 S.E.2d 595, 600 (W. Va. 2000) (surety not liable for
principal's negligence under performance bond inasmuch as "[t]he
purpose of a performance bond is not to insure against the
negligent acts of the contractor").

D.  Mid-State's Stored Materials Claim

        Mid-State contends that it is entitled to summary
judgment on its claim for damages relating to Thrasher's alleged
negligence in failing to obtain verification that title to the
stored materials had in fact passed to the District.  While Mid-
State has presented compelling evidence that Thrasher failed to
fulfill its duty, the court declines to grant summary judgment in
light of the causation issues discussed above.  Stewart v.
George, 607 S.E.2d 394, 398 (W. Va. 2004)(questions of

30

negligence, contributory negligence, proximate cause, intervening
cause and concurrent negligence are questions of fact for the
jury where the evidence is conflicting or when the facts, though
undisputed, are such that reasonable men draw different
conclusions from them).[12]

IV.

In view of the foregoing, it is ORDERED that

(1) Thrasher's motion for summary judgment be, and it
hereby is granted with respect to Count III of Mid-State's
complaint, and denied in all other respects.

(2) Mid-State's counter-motion for partial summary
judgment be, and it hereby is, granted to the limited extent it
seeks to prohibit Thrasher from (a) introducing evidence that
Mid-State was comparatively negligent and (b) suggesting that
Holley's fraud may be imputed to Mid-State, and the motion is

---

[12]Indeed, Mid-State appears to recognize that these
questions are appropriately left to a jury inasmuch as Mid-State
has listed the following question in its consolidated pretrial
order under the heading of contested issue of fact: "Did TEI
[Thrasher] breach its duty to MSS [Mid-State] and the standard of
care in certifying pay applications which included payments for
stored materials where it failed to obtain evidence from Holley
that stored materials had been paid for by Holley such that title
for those stored materials had passed to Mingo [the District]
upon payment by Mingo to Holley for those stored materials?"

denied in all other respects.

The Clerk is directed to forward copies of this

memorandum opinion and order to all counsel of record.

DATED: May 16, 2006

John T. Copenhaver, Jr.
United States District Judge